UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
EDWARD RAGUSA,                              :

                        Plaintiff,       :       05 Civ. 6187 (WHP)

                -against-            :       MEMORANDUM AND ORDER

UNITED PARCEL SERVICE,                      :

                     Defendant.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WILLIAM H. PAULEY III, District Judge:

           Plaintiff Edward Ragusa brings this action against his former employer, United Parcel Service ("UPS"), for violations of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12203, et seq., New York State Human Rights Law ("NYSHRL"), New York Executive Law §§ 290, et seq., and New York City Human Rights Law ("NYCHRL"), New York City Administrative Code §§ 8-101, et seq. Defendant moves for summary judgment. For the following reasons, Defendant's motion is denied.

BACKGROUND

I. Ragusa's Injury

           On March 15, 2001, Ragusa suffered an injury to his groin and back while employed by UPS as a Local Sort Supervisor. (Defendant's Statement Pursuant to Rule 56.1 dated Apr. 30, 2007 ("Def. 56.1 Stmt.") ¶¶ 7-8.) As a result of the injury, Ragusa took medical leave with full pay between April 3, 2001 and April 20, 2001, and again from August 2001 to October 2001. (Def. 56.1 Stmt. ¶¶ 8-9, 15.) Between October 2001 and mid-March 2002, Ragusa worked within his physical restrictions as a Compliance Specialist, filling in for an

employee on maternity leave.  (Def. 56.1 Stmt. ¶¶ 15-16, 18; Declaration of Aaron J. Schindel

dated Apr. 30, 2007 ("Schindel Decl.") Ex. A: Transcript of Deposition of Edward Ragusa dated

Apr. 27, 2006 ("Ragusa Tr.") at 304.)

               Ragusa consulted with two physicians, Dr. Joseph Ciuffo ("Ciuffo"), his primary

care physician, and Dr. Leon Nadrowski ("Nadrowski"), a surgeon.  On August 8, 2001, Ciuffo

advised C. Lamar Stockman, UPS's Metro New York Human Resources Manager ("Stockman"),

that Ragusa could not return to work because he could not adhere to physical restrictions Ciuffo

imposed on him.  (Declaration of Allegra Fishel dated June 22, 2007 ("Fishel Decl.") Ex. 5:

Transcript of Deposition of Joseph Ciuffo dated Sept. 19, 2006 ("Ciuffo Tr.") at 76-77; Fishel

Decl. Ex. 11: Letter from Cioffu dated Aug. 8, 2001.)  Subsequently, on August 9, 2001, Ragusa

attended a meeting with Stockman and three of his managers (the "August 9 Meeting").

Stockman told the managers they should comply with Ragusa's physical restrictions.  He also

informed Ragusa that if he could not return to his position as Local Sort Supervisor without any

medical restrictions by March 15, 2002, twelve months from his injury, he would be terminated

(the "Twelve Month Policy").  (Declaration of Edward Ragusa dated June 22, 2007 ("Ragusa

Decl.") ¶¶ 44-45.)  Stockman told Ragusa that UPS would not accommodate him because UPS

did not want to "set a precedent."  (Ragusa Decl. ¶ 45; Ragusa Tr. 252.)

               On September 4, 2001, Nadrowski informed UPS that Ragusa's injury was

permanent.  (Declaration of Leon Nadrowski, M.D., F.A.C.S. dated June 14, 2007 ("Nadrowski

Decl.") ¶¶ 11-12, Ex. 1: Note from Nadrowski dated September 4, 2001.)  On September 19,

2001, Ciuffo also informed Qin Wang, UPS's Metro New York Occupational Health Supervisor

("Wang"), that Ragusa had a "chronic condition" and recommended a management position

without any lifting.  (Fishel Decl. Ex. 15: Wang File Memorandum at 6.)  On January 30, 2002,

Ciuffo further informed UPS that Ragusa's condition was probably permanent. (Ciuffo Tr. at 91-92; Fishel Ex. 16: Physician's Progress Record at P001131.)

On January 31, 2001, Wang again reminded Ragusa of the Twelve Month Policy. (Fishel Decl. Ex. 15 at 9.) In late February Ciuffo advised Wang that he was aware of the Twelve Month Policy and was going to permit Ragusa to work subject only to restrictions on heavy lifting. (Fishel Decl. Ex: 14: Transcript of Deposition of Qin Wang ("Wang Tr.") at 253-56; Fishel Decl. Ex. 15 at 9-10.) Wang was "skeptical" of Ciuffo's change in diagnosis. (Wang Tr. at 256; Fishel Decl. Ex. 15 at 10.) Nadrowski informed Wang on February 28, 2002 that Ragusa could return to work in a sedentary position with no lifting.

On March 12, 2002, Ragusa met with Stockman, Wang, and David Goldstein, UPS's Employee Relations Manager ("Goldstein") (the "March 12 Meeting"). (Def. 56.1 Stmt. ¶ 22; Plaintiffs Statement of Material Facts Pursuant to Rule 56.1 dated June 22, 2007 ("Pl. 56.1 Stmt.") ¶ 86.)  At that time, Ragusa agreed to resume working as a Local Sort Supervisor because he believed that if he did not he would lose his job pursuant to the Twelve Month Policy. (Ragusa Decl. ¶¶ 55). After the March 12 Meeting, UPS assigned Ragusa to a Preload Supervisor position and told him not to lift any packages. (Def. 56.1 Stmt. ¶¶ 23-24; Plaintiff's Response to Defendants' Rule 56.1 Statement dated June 22, 2007 ("Pl. 56.1 Res.") ¶ 23; Ragusa Decl. ¶¶ 55.)

On March 13, 2002, Nadrowski told UPS that Ragusa was unable to perform any of the physical functions of the Preload Supervisor position and "strongly recommended" a position "similar to that of an Executive at UPS where absolutely no lifting is required and only working at his desk." (Wang Tr. at 259; Fishel Decl. Ex. 15 at 10; Nadrowski Decl. ¶¶ 16-18, 21, Ex. 3: Letter from Nadrowski dated Mar. 13, 2002.)

II. The Preload Supervisor Position

The Preload Supervisor oversees the early morning unloading of trailers, the sorting of packages by zip code, and the loading of UPS Package Cars for local delivery. (Ragusa Decl. ¶ 60.) At Ragusa's facility, Preload Supervisors oversee two part-time supervisors and approximately eighty hourly unionized employees. (Def. 56.1 Stmt. ¶ 23.) Though union rules prohibit supervisors from loading, unloading, and performing lifting work, Ragusa testified that management perform those functions when short-staffed. (Schindel Decl. Ex. B: Transcript of the Deposition of Clifford Lamar Stockman dated June 2, 2006 ("Stockman Tr.") at 138-39; Ragusa Tr. at 361-62.)

The Preload Supervisor must: (1) set up the preload operations, make sure all the equipment is working properly, and adjust the belt speeds using a crank located below the conveyor belt; (2) maintain an active presence during the sorting of packages, climb on and off the conveyor belt, pick up packages that have fallen, spot check packages loaded on to trucks for delivery, train employees in safe package handling, and frequently break jams on the conveyor belt; (3) unload, sort, and load packages when short-staffed; and (4) transport late or missorted packages to the appropriate driver for delivery. (Ragusa Decl. ¶¶ 21, 61-62; Ragusa Tr. 406, 408-10; Declaration of Johnny Addison dated June 7, 2007 ("Addison Decl.") ¶¶ 4, 6-7; Declaration of Richard Bakos dated June 11, 2007 ("Bakos Decl.") ¶¶ 6-9; Declaration of Frank Caputi dated June 15, 2007 ("Caputi Decl.") ¶¶ 6-9.) The position requires lifting, bending, climbing, pushing, pulling, and standing for extended periods. (Addison Decl. ¶ 4; Bakos Decl. ¶¶ 4, 6-7; Caputi Decl. ¶¶ 6-7, 9, 11.)

III. The April 15, 2002 Meeting

Immediately after the March 12 Meeting, Michael Ridolfi, UPS's Workplace Planning Manager ("Ridolfi"), gave Ragusa forms to request a reasonable accommodation under UPS's ADA procedure. (Ragusa Decl. ¶ 56.) On April 11, 2002, Ridolfi sent Ragusa a letter informing him that UPS had made a preliminary determination that he might be eligible for a reasonable accommodation, and scheduling a meeting for April 15, 2002. (Def. 56.1 Stmt. ¶ 32; Fishel Decl. Ex. 20: Letter from Ridolfi dated April 11, 2002.) On April 15, 2002, Ragusa met with Stockman and Ridolfi (the "April 15 Meeting"); the parties dispute whether Goldstein also attended the meeting. (Def. 56.1 Stmt. ¶ 35; Pl. 56.1 Res. ¶ 35.)

The parties also dispute exactly what occurred at the April 15 Meeting. Stockman testified that he offered to tailor the Preload Supervisor position to accommodate Ragusa's needs by eliminating lifting, providing rest periods, and the use of stairs, but that Ragusa refused to accept the position, stating that it was not possible to perform the job without lifting packages. (Stockman Tr. at 174-85.) Ragusa testified that the meeting began with Ragusa completing a UPS Accommodation Checklist Form (the "Checklist"), requesting accommodations of no lifting, pushing, pulling, or extended standing, and indicating that he could perform a position in Human Resources or Business Development. (Ragusa Tr. at 422-23, 427; Fishel Decl. Ex. 21: UPS Accommodation Checklist Form dated April 15, 2002.) He further testified that a brief discussion of the Preload Supervisor job followed, but Stockman did not offer the accommodations Ragusa had requested. (Ragusa Tr. at 423.)

It is undisputed that Stockman and Ridolfi then told Ragusa that there were only four available positions in the Metro New York District, all of which were non-management positions, and only one of which Ragusa could perform within his restrictions. (Def. 56.1 Stmt.

¶¶ 39, 41.)  That position, the Preferred Customer Associate position, was a significant demotion in salary, benefits, and grade level.  (Fishel Decl. Ex. 3: Transcript of the Deposition of David Goldstein dated May 22, 2006 ("Goldstein Tr.") at 211; Ragusa Decl. ¶ 77.)  Stockman testified that he told Ragusa that if he accepted the position, he could move to a management position when one became available.  (Stockman Tr. 197.)  However, Ridolfi testified that he had not researched what management positions were available.  (Ridolfi Tr. at 184-85.)  Ragusa told Stockman and Ridolfi that none of the available positions were feasible or appropriate.  As a result, he was terminated.  (Ragusa Decl. ¶ 83, Def. 56.1 Stmt. ¶ 47.)

According to Ragusa, in February 2002, a Preferred Customer Service Supervisor position, like one he previously held, was available at UPS's West Long Island Facility.  (Ragusa Tr. 311-15.)  Ragusa also testified that he asked Goldstein about that position at the time and Goldstein assured him he would look into it.  However, at the April 15 Meeting, Goldstein told Ragusa the position had been filled.  (Ragusa Tr. 311-15.)


IV. Workers' Compensation and Social Security Disability Benefits

Ragusa applied for Workers' Compensation Benefits after his March 2001 injury, pursuant to UPS policy.   His application was denied after the New York State Workers' Compensation Board (the "Board") found that Ragusa voluntarily withdrew from the workforce because "the positions of pre-loader with accommodations of no lifting, rest periods and stairs, and that of customer associate were within the restrictions set forth by Dr. Nadrowski, and that the claimant refused these positions because of his interest in certain supervisory positions." (Schindel Decl. Ex. I: Opinion of the New York State Worker's Compensation Board dated Sept. 21, 2006 ("Worker's Compensation Opinion") at 5; Ragusa Decl. ¶ 29.)

On October 11, 2002, Ragusa applied for Social Security Disability ("SSD") benefits. (Def. 56.1 Stmt. ¶¶ 48; Schindel Decl. Ex. J: Social Security Administration Decision dated Dec. 14, 2004 (the "Social Security Decision") at 1.) On December 14, 2004, Ragusa was found disabled retroactive to April 15, 2002 based on the combined effects of his back disability, carpal tunnel syndrome, and depression. (Def. 56.1 Stmt. ¶¶ 49; Social Security Decision at 5.) The Social Security Decision found that Ragusa's capacity "for the full range of sedentary work" was reduced by his "inability to use his hands for fine manipulation as a result of his bilateral carpal syndrome." (Schindel Decl. Ex. J: Social Security Decision at P000521.)

## DISCUSSION

### I.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Liberty Lobby, 477 U.S. at 255.

### II. Reasonable Accomodation

#### A. Legal Standard

To establish discrimination under the ADA, the NYSHRL and the NYCHRL, a plaintiff must show that: (1) he is an individual who has a disability within the meaning of the ADA; (2) an employer that is covered by the statute had reasonable notice of the disability; (3) with a reasonable accommodation, he could perform the essential functions of the position sought; and (4) the employer refused to make such accommodations. Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 n.3, 216 (2d Cir. 2001); Romanello v. Shiseido Cosmetics Am. Ltd., No. 00 Civ. 7201 (JGK), 2002 WL 31190169, at *5 (S.D.N.Y. Sept. 30, 2002). UPS concedes that Ragusa had a disability within the meaning of the ADA as of January 30, 2002, when Ciuffo informed UPS that Ragusa's injury was probably permanent. UPS also acknowledges notice of that disability.[1]

A reasonable accommodation may include, among other things, job restructuring or reassignment to a vacant position. 42 U.S.C. § 12111(9); Jackan v. New York State Dep't of Labor, 205 F.3d 562, 566 (2d Cir. 2000); EEOC v. Yellow Freight Syst., Inc., No. 98-2270, 2002 WL 31011859, at *18 (S.D.N.Y. Sept. 9, 2002). The plaintiff bears the burden of establishing that either an accommodation exists that permits him to perform the essential functions of his job, or that there was a vacant position into which he could have been transferred. Jackan, 205 F.3d at 566. The burden then shifts to the defendant to show that the proposed accommodation would cause undue hardship. Jackan, 205 F.3d at 566; Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 138 (2d Cir. 1995).

Reassignment to a position that would "involve a significant diminution in salary, benefits, seniority or other advantages" does not constitute reasonable accommodation if a

---

[1] Although, Ragusa has presented evidence that UPS was on notice that he had a disability within the meaning of the ADA prior to January 30, 2002, it is undisputed that between August 2001 and March 2002, Ragusa was either on medical leave or accommodated in the Compliance Specialist position.

position comparable to the employee's former position is available.  Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 99 (2d Cir. 1999).  However, an employer need not accept an employee's requested accommodation, including a request for reassignment, if the employer offers a reasonable accommodation of its own.  Yellow Freight, 2002 WL 31011859, at *21; see also Norville, 196 F.2d at 99.

The ADA requires "an informal, interactive process . . . [which] should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."  29 C.F.R. § 1630.2(o)(3); see also Lovejoy-Wilson, 263 F.3d 208, 218-219; Jackan, 205 F.3d at 566.  The Court of Appeals has not decided whether the failure to participate in an interactive process gives rise to an independent cause of action, see Hartnett v. Fielding Graduate Institute, 198 Fed. App'x. 89, 94 (2d Cir. 2006), but courts in this circuit have found that failure to engage in the interactive process is relevant if it leads to a failure to provide an accommodation.  Yellow Freight, 2002 WL 31011859, at *25; Picinich v. United Parcel Service, 321 F. Supp. 2d 485, 511 (N.D.N.Y. 2004).

B. Collateral Estoppel

1. ADA Claim

The Supreme Court has held that unreviewed state administrative proceedings do not have preclusive effect in subsequent Title VII or Age Discrimination in Employment Act actions.  Univ. of Tennessee v. Elliot, 478 U.S. 778 (1986); Astoria Federal Savs. & Loan v. Solimino, 501 U.S. 104, 110-14 (1991).  Courts in this circuit have extended those holdings to ADA actions.  See Smith-Henze v. Edwin Gould Servs. for Children and Families, No. 06 Civ. 3049 (LBS) (DCF), 2006 WL 3771092, at *4 (S.D.N.Y. Dec. 21, 2006); Greenberg v. New York City Transit Auth., 336 F. Supp. 2d 225, 243 (E.D.N.Y. 2004); Jones v. New York City Hous.

Auth., No. 94 Civ. 3364, 1995 WL 736916, at *1-2 (S.D.N.Y. Dec. 13, 1995); see also Kosakow

v. New Rochelle Radiology Assocs., 274 F.3d 706, 728 (2d Cir. 2001) (noting in dicta that "to

the extent [plaintiff's] employment discrimination claims were based on the ADA, the

determination of the [New York State Division of Human Rights] would have no effect on

subsequent federal litigation.").  But see Cobian v. City of New York, No. 04 Civ. 1941 (GEL),

2006 WL 212292, at *5 (S.D.N.Y. Jan. 24, 2006) (plaintiff's ADA claim barred by decision of a

city administrative law judge).  Courts do give "substantial weight" or "great weight" to the

factual findings of prior administrative proceedings.  Tomasino v. Mount Sinai Med. Ctr. &

Hosp., No. 97 Civ. 5252 (TPG), 2003 WL 1193726, at *12 (S.D.N.Y. Mar. 13, 2003);

Greenberg, 336 F. Supp. 2d at 243; see also Collins v. New York City Transit Auth., 305 F.3d

113, 119 (2d Cir. 2002) (finding of an "undisputedly independent, neutral, and unbiased

adjudicator" was "highly probative of the absence of discriminatory intent").

   The Board's finding that the Preload Supervisor position with accommodations of

no lifting, rest periods and stairs was within Nadrowski's restrictions is directly contradicted by

Nadrowski's statement to UPS on March 13, 2002 that Ragusa was unable to perform any of the

physical functions of the Preload Supervisor position and that he needed a sedentary desk job.

(Nadrowski Decl. ¶¶ 16-18, 21, Ex. 3: Letter from Nadrowski dated Mar. 13, 2002.)  See also

Collins, 305 F.3d at 119 (to survive a motion for summary judgment plaintiff "must present

strong evidence that the [administrative] decision was wrong as a matter of fact").  Accordingly,

this Court cannot accord the Board's findings "substantial weight," and will determine whether

the undisputed facts demonstrate that UPS offered to reasonably accommodate Ragusa's

disability.

### 2. NYSHRL and NYCHRL Claims

Under New York law, collateral estoppel gives conclusive effect to an administrative agency's determination where: (1) the issue sought to be precluded is identical to a material issue decided by the administrative agency; and (2) there was a full and fair opportunity to contest the issue. Jeffreys v. Griffin, 801 N.E.2d 404, 407 (N.Y. 2003); Kosakow, 274 F.3d at 730. Factors that courts consider in deciding whether a party had a full and fair opportunity to contest the issue include "the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and forseeability of future litigation." Schwartz v. Pub. Adm., 246 N.E.2d 725, 729 (N.Y. 1969).

Although Ragusa was represented by counsel in the proceedings and had the opportunity to testify before the Board and present evidence, the Worker's Compensation Opinion is contradicted by evidence that was before the Board. While the Board found that Ragusa voluntarily withdrew from the workforce because he could have accepted the Preferred Customer Associate position, a jury could find that transfer to an inferior position does not constitute reasonable accommodation. See Norville, 196 F.3d at 99; Yellow Freight, 2002 WL 31011958, at *26; Romanello, 2002 WL 31190169, at *5. In addition, Ragusa was allowed only limited pre-hearing discovery in the administrative proceeding and has uncovered new evidence through the discovery process in this action, including UPS's Twelve Month Policy. Cf Kosakow, 274 F.3d at 733-35 (lack of new evidence weighs against finding a full and fair opportunity). For these reasons, the Court finds that Ragusa did not have a full and fair

opportunity to contest the issue of whether UPS offered him a reasonable accomodation before the Board, and is not collaterally estopped from litigating the issue before this Court.

    C. <u>Reasonable Accommodation</u>

        A triable issue of fact exists regarding whether there was a vacant Preferred Customer Service Supervisor position into which Ragusa could have been transferred in February 2002. <u>See</u> <u>Picinich</u>, 321 F. Supp. 2d at 505 (plaintiff met his burden by identifying a position that was filled two months prior to a meeting with defendant to discuss reasonable accommodations). Whether Ragusa's bilateral carpal tunnel syndrome would have prevented him from performing the essential functions of the Preferred Customer Service Supervisor position, or any other position, is also a question of fact. <u>See</u> <u>Borkowski v. Valley Cent. Sch. Dist.</u>, 63 F.3d 131, 140 (2d Cir. 1995) ("[I]dentification of essential functions of a job requires a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice."). Whether UPS's offer of the Preferred Customer Associate position was a reasonable accommodation depends upon how a jury answers these questions. <u>See</u> <u>Norville</u>, 196 F.2d at 99.

        There are also disputed issues of fact as to whether UPS offered Ragusa a reasonable accommodation in the Preload Supervisor position. <u>See</u> <u>Norville</u>, 196 F.2d at 99. First, Stockman and Ragusa provided contradictory testimony regarding whether UPS actually attempted to accommodate Ragusa in the Preload Supervisor position at the April 15 Meeting. Second, even if Stockman suggested additional accommodations to the Preload Supervisor position, there are questions of fact regarding whether Ragusa could adequately perform the job functions given the conflicting descriptions of the Preload Supervisor position. <u>See</u> <u>Yellow Freight</u>, 2002 WL 31011958, at *26 (whether the accommodations defendants offered were

feasible was relevant to the question of whether defendants had offered a reasonable accommodation). Third, there are disputed issues of fact regarding what accommodations Ragusa needed. While Ciuffo's medical prohibition only extended to heavy lifting, Wang was skeptical about that recommendation given Ciuffo's earlier stance that Ragusa's disability was permanent. In addition, Nadrowski advised UPS numerous times that Ragusa required a sedentary position. Ragusa had also requested a position in Human Resources or Business Development at the April 15 Meeting. Finally, a jury could find that UPS failed to engage in the interactive process in good faith given Ragusa's testimony that Stockman told him at the August 9 Meeting that UPS would not make any accommodations for Ragusa because UPS did not want to "set a precedent", the instructions to Ragusa that he had to return to work without any restrictions within twelve months of his injury in order to keep his job, and Ridolfi's testimony that he had not researched what management positions were available prior to the April 15 Meeting.

Accordingly, there are disputed issues of fact regarding whether UPS provided a reasonable accommodation that preclude summary judgment on Ragusa's failure to reasonably accommodate claims.

III. Discriminatory Termination Claims

Because there are disputed issues of fact regarding whether UPS provided a reasonable accommodation, defendant's motion for summary judgment on Ragusa's discriminatory discharge claims is also denied. See Parker v. Columbia Pictures Indus., 204 F.3d 326, 332, n.1 (2d Cir. 2000) (first three elements of failure to reasonably accommodate claim make out a prima facie case of discriminatory termination); Picinich, 321 F. Supp. 2d at 516.

CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied.

Dated:   March 3, 2008
         New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record*:

Kathleen Peratis, Esq.
Cara E. Greene, Esq.
Mark R. Humowiecki, Esq.
Outten & Golden LLP
3 Park Avenue
New York, NY  10016
*Counsel for Plaintiff*

Aaron J. Schindel, Esq.
Tracey I. Levy, Esq.
Amy F. Melican, Esq.
Proskauer Rose LLP
1585 Broadway
New York, NY  10036
*Counsel for Defendant*