UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
EDWARD RAGUSA,                                 :

                    Plaintiff,       :       05 Civ. 6187 (WHP)

    -against-                             :       MEMORANDUM AND ORDER

UNITED PARCEL SERVICE,                    :

                    Defendant.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WILLIAM H. PAULEY III, District Judge:

        On September 26, 2008, after an eight-day jury trial in this action, the jury returned a verdict in favor of Defendant United Parcel Service ("UPS") on Plaintiff Edward Ragusa's ("Ragusa") Americans with Disabilities Act ("ADA") and New York City Human Rights Law ("NYCHRL") claims. Ragusa now moves for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. For the following reasons, Ragusa's motion is denied.

## DISCUSSION

I. Legal Standard

        Pursuant to Rule 59 of the Federal Rules of Civil Procedure a "new trial may be granted . . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." However, a motion for a new trial should only be granted if "the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice." DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 133 (2d Cir. 1998).

        A new trial may be granted if the jury's verdict is against the weight of the evidence. See DLC Mgmt., 163 F.3d at 133. The court is free to weigh the evidence and need

not view it in the light most favorable to the verdict winner, but should "rarely disturb a jury's evaluation of a witness's credibility." DLC Mgmt., 163 F.3d at 134. While a new trial may be granted "even if there is substantial evidence supporting the jury's verdict," the jury verdict must be egregious. DLC Mgmt., 163 F.3d at 134.

II. Jury Verdict

To establish discrimination under the ADA and the NYCHRL, a plaintiff must show that: (1) he is an individual who has a disability within the meaning of the ADA; (2) an employer that is covered by the statute had reasonable notice of the disability; (3) with a reasonable accommodation, he could perform the essential functions of the position sought; and (4) the employer refused to make such accommodations. See Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 n.3, 216 (2d Cir. 2001); Romanello v. Shiseido Cosmetics Am. Ltd., No. 00 Civ. 7201 (JGK), 2002 WL 31190169, at *5 (S.D.N.Y. Sept. 30, 2002).

The ADA requires "an informal, interactive process . . . [which] should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3); see also Lovejoy-Wilson, 263 F.3d at 218-219. The Court of Appeals has not decided whether the failure to participate in an interactive process gives rise to an independent cause of action, see Hartnett v. Fielding Graduate Inst., 198 Fed. App'x 89, 94 (2d Cir. 2006), but courts in this circuit have found that failure to engage in the interactive process is relevant if it leads to a failure to provide an accommodation. EEOC v. Yellow Freight Syss., Inc., No. 98-2270, 2002 WL 31011859 (THK), at *25 (S.D.N.Y. Sept. 9, 2002); Picinich v. United Parcel Serv., 321 F. Supp. 2d 485, 511 (N.D.N.Y. 2004).

2

While the jury found that Ragusa was disabled within the meaning of the ADA and the NYCHRL, and that he had requested a reasonable accommodation from UPS, it found that UPS offered Ragusa a reasonable accommodation for his disability. Ragusa now argues that the Court should grant a new trial because the weight of the evidence demonstrated that UPS did not offer an accommodation that would enable him to perform the essential duties of his position, that UPS did not enter into the interactive process in good faith, and that UPS terminated Ragusa because he could not perform the essential functions of his position.

During trial, the jury heard from twenty witnesses, including Ragusa, three of his physicians, and a number of current and former UPS employees. Two doctors—Dr. Leon Nadrowski and Dr. Joseph Ciuffo—testified regarding Ragusa's disability and resulting work restrictions. Dr. Cuiffo, Ragusa's primary care physician, testified that on February 27, 2002, he returned Ragusa to full duty at UPS with restrictions on "heavy lifting" as a result of Ragusa's back and groin injury. (Trial Transcript at 1167.) He later provided UPS with more specific instructions: that Ragusa could lift zero to ten pounds frequently, 10 to 25 pounds occasionally, and 25 to 30 pounds occasionally, but not repetitively. (Trial Transcript at 1169, 1171; Trial Exhibit AQ: UPS Return to Work Release Form.) However, Dr. Nadrowski, another of Ragusa's doctors, informed UPS in March 2002 that Ragusa was unable to perform work requiring him to lift, push, or climb. (Trial Exhibits 111G, 111H: Medical forms signed by Dr. Nadrowski.)

Ragusa began to work as a Preload Supervisor in mid-March 2002. Current and former UPS employees testified that the Preload Supervisor was a physically demanding job. (Trial Transcript at 393-97, 403-05, 412-15, 689-90, 1009-15.) In addition, the job description for the Preload Supervisor position listed several physical activities as essential job functions, including moving packages weighing up to 150 pounds. (Trial Exhibit 61: UPS Job Description

3

for Preload Supervisor.) However, other employees portrayed the Preload Supervisor as less physically demanding, more supervisory and only requiring oversight of union employees and part-time supervisors who were responsible for most of the physically demanding work. (Trial Transcript at 449-54, 964-66, 1235-36, 1028-30, 1058-64, 1071-72.)

There was also conflicting testimony regarding Ragusa's performance in the Preload Supervisor position. Dr. Ciuffo testified that on April 8, 2002, a few weeks after Ragusa began in the Preload Supervisor position, Ragusa told him that he had been "doing well" in the position without any heavy lifting. (Trial Transcript at 1174-75.) Qin Wang, a UPS nurse, testified that she spoke with Ragusa after he began as a Preload Supervisor and he did not mention having any difficulty. (Trial Transcript at 664-65.) On the other hand, the jury heard testimony that Ragusa, who had never previously been written up for any infraction, was written up eleven times by his supervisor in his first two weeks as a Preload Supervisor. (Trial Exs. 78A, 78C, 78D, 78E, 78H, 78I: Write-ups of Ragusa by Frank Caminero.)

On April 15, 2002, Ragusa met with several UPS employees to discuss accommodation of his disability. At that meeting, UPS offered to accommodate Ragusa's disability by allowing him to continue in the Preload Supervisor position without any lifting, but Ragusa refused and was terminated. (Trial Transcript at 346, 543, 785-86, 1246, 1302-03.) The jury was presented with UPS's Position Statement to the Equal Employment Opportunity Commission (the "EEOC"), which stated that the "sole reason for [Ragusa's termination] was his inability to perform the essential functions of his position and the unavailability of an alternative position that the charging party would accept." (Trial Exhibit 49: UPS EEOC Position Statement.) The jury also heard a tape-recorded conversation between Ragusa and David Goldstein, a UPS Employee Relations Manager, during which Goldstein stated Ragusa was

4

terminated because he could not perform the Preload Supervisor position as a result of his disability and there was no accommodation that UPS could make for Ragusa. (Trial Transcript at 829-30.) While Goldstein denied making the statements, he admitted that the voice on the tape sounded like his voice. (Trial Transcript at 829-30.)

The jury also heard conflicting evidence concerning the parties' participation in the interactive process envisioned by the ADA. Lamar Stockman, UPS's Human Resource Manager, testified regarding a UPS policy requiring an employee to return to full-duty work within 12 months of an injury or face termination. (Trial Transcript 1269-71.) The jury could have found that this policy was contrary to the requirements of the ADA. However, Mr. Stockman also testified that the policy allows the employee to return to full-duty work with an accommodation. In addition, Stockman, who was responsible for participating in the interactive process, testified that prior to April 15, 2002, he never spoke with any of Ragusa's doctors or reviewed his medical records. (Trial Transcript at 1288-89.) The jury also heard testimony that at the April 15, 2002 meeting, Stockman offered Ragusa four non-management jobs where he knew were inappropriate. (Trial Transcript at 532.) That evidence was undermined by Ragusa's acknowledgment that between his injury in March 2001 and March 2002, when he began to work as a Preload Supervisor, UPS provided him with several temporary accommodations—permitting him to split the responsibilities of his original position with another supervisor while paying him his full salary, providing him with three paid leaves of absence, and assigning him to a clerical position for several months while an employee was on maternity leave. (Trial Transcript at 280-82, 301-04, 332-33.)

Viewing all of the evidence, the Court cannot find that the jury verdict was seriously erroneous, let alone egregious. While there was evidence that suggested the Preload

5

Supervisor was a physically demanding position that Ragusa could not have performed, even without doing any lifting, there was certainly ample evidence to the contrary. Several employees testified that it was a supervisory position and that any physical work was performed by other employees. There was also evidence that Ragusa did not complain about the position when he was performing it and had told Dr. Cuiffo he was "doing well." Moreover, there were significant credibility issues for the jury that this Court will not disturb—for example, which employee testimony the jury credited regarding the nature of the Preload Supervisor position and which Doctor's assessment to credit regarding Ragusa's condition and work restrictions. As for UPS's participation in the interactive process, the evidence was in conflict—some suggesting that UPS was not acting in good faith and other evidence showing that it had undertaken to find Ragusa temporary accommodations. Accordingly, Ragusa's motion for a new trial on the ground that the jury verdict was against the weight of the evidence is denied.

III. Jury Instructions

"A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." Anderson v. Branen, 17 F.3d 552, 556 (2d Cir. 1994). A court must consider whether the jury instructions as a whole "gave a misleading impression or inadequate understanding of the law." Plagianos v. Am. Airlines, Inc., 912 F.2d 57, 59 (2d Cir. 1990). "An erroneous instruction, unless harmless, requires a new trial." Anderson, 17 F.3d at 556.

A. <u>Business Judgment Instruction</u>

Ragusa objected to the following instruction at trial and now argues that it was erroneous because it confused the jury by suggesting Ragusa had the burden to establish intentional discrimination:

> Under the law, UPS is entitled to exercise its management discretion and make its own business judgment. UPS had the right to make personnel decisions concerning Plaintiff for good reasons, bad reasons, or for no reason at all, so long as its decisions were not based on unlawful disability discrimination as I have previously explained that to you. The relevant question is not whether UPS showed poor or erroneous judgment but whether UPS violated the law.

The instruction made no reference to intentional discrimination or motive. There is nothing in the instruction that suggested to the jury that Ragusa had a burden to establish either intentional discrimination or that UPS was motivated by discriminatory animus. In fact, the Court removed all references to "intentional discrimination" from all proposed jury instructions in order to avoid any potential confusion. (Tr. at 1122-23, 1352.) In addition, the Court specifically instructed the jury that while UPS was entitled to make personnel decisions for any reason, it could not engage in unlawful disability discrimination, as the Court had previously explained to the jury. The Court had previously instructed the jury in great detail regarding the law of disability discrimination in the context of a reasonable accommodation claim. Thus, considering the jury instructions as a whole, there is no risk that the jury was misled or confused by the business judgment instruction.

B. <u>Reasonable Accommodation</u>

Over Ragusa's objection, the Court instructed the jury that: "An employer is not required to, but may, eliminate or alter essential functions of the position as a reasonable accommodation." It is well established that an employer is not required to eliminate essential

7

functions of a job in order to accommodate an individual with a disability. See e.g., Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 140 (2d Cir. 1995); Gilbert v. Frank, 949 F.2d 637, 642 (2d Cir. 1991) (plaintiff failed to meet his burden to show he could perform the essential functions of the job with a reasonable accommodation because his suggested accommodation required that his employer eliminate essential functions of his job). That the law does not require an employer to eliminate essential functions does not prevent an employer from doing so if it chooses. Ragusa provides no contrary caselaw.

To hold that an employer cannot eliminate or alter essential functions in order to accommodate an employee's disability would discourage employers who wished to do more than the ADA requires. See e.g., Holbrook v. City of Alpharetta, Georgia, 112 F.3d 1522, 1528 (11th Cir. 1997) (requiring employer to make permanent its temporary accommodation that eliminated certain essential functions would "discourage other employers from undertaking the kinds of accommodations" that "exceed[] that which the law requires"); Phelps v. Optima Health, Inc., 251 F.3d 21, 26 (1st Cir. 2001) (same); Winfrey v. City of Chicago, 259 F.3d 610, 616 (7th Cir. 2001) (defendant's temporary accommodation of plaintiff's disability with a modified position that eliminated certain essential functions was "an accommodation that the City was not obliged to provide"); see also EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disability Act, No. 925.002 (Oct. 17, 2002) ("While an employer is not required to eliminate an essential function or lower a production standard, it may do so if it wishes.").

8

IV. Amended Complaint

Less than three weeks before trial and over three years after filing the action, Ragusa informed the Court that he intended to move to amend the complaint to include retaliation and interference claims. After letter briefing, this Court denied the motion.

A motion to amend should be denied only for such reasons as "undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." Richardson Greenshields Sec., Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir. 1987). This Court previously held that UPS would be prejudiced by the need to prepare a defense against new claims just days before trial. Ragusa rehashes his previous arguments in his post-trial motion. Accordingly, that branch of Ragusa's motion for a new trial to assert retaliation and interference claims is denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a new trial is denied in all respects.

Dated: March 3, 2009
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

9

*Counsel of Record*:

Allegra Louise Fishel, Esq.
Cara Elizabeth Greene, Esq.
Molly A. Brooks, Esq.
Outten & Golden, LLP
3 Park Avenue, 29th Floor
New York , NY 10016
*Counsel for Plaintiff*

Elise Michelle Bloom, Esq.
Steven D. Hurd, Esq.
Amy F. Melican, Esq.
Gershom R. Smith, Esq.
Proskauer Rose LLP
1585 Broadway
New York , NY 10036
*Counsel for Defendant*